# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD JONES, | CASE NO. 1:10-CV-01568-DLB PC |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND |
| v. | |
| KLARK, et al., | (DOC. 9) |
| Defendants. | RESPONSE DUE WITHIN THIRTY DAYS |

**Screening Order**

**I.     Background**

Plaintiff Edward Jones ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action by filing his complaint on August 31, 2010. Doc. 1. On April 25, 2011, the Court dismissed Plaintiff's complaint with leave to file an amended complaint within thirty days. Doc. 8. On May 23, 2011, Plaintiff filed his first amended complaint. Doc. 9.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been

1

paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*

## II. Summary Of Amended Complaint

Plaintiff is currently incarcerated at California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, where the events giving rise to this action occurred. Plaintiff names as Defendants: C. Clark, chief medical officer Enenmoh, CC II A. Rivera, case workers C. Akins and S. Martins, psychologist Ashtarie, mental health staffer Talisman, mailroom workers L. Draper and M. Madden, and R&R staff Sumpter and Black. Plaintiff also names sergeant Pegleeosi and physician assistant T. Bayers.

Plaintiff alleges the following. Plaintiff was illegally transferred to dorm living instead of cell status when he arrived at CSATF from San Quentin Prison.[1] Am. Compl. 3. Plaintiff was denied access to some leg braces and orthopedic boots. *Id.* Plaintiff complains that he was also denied previously issued personal property. *Id.* Plaintiff was offered the opportunity to mail these items, but the items were instead disposed because of Plaintiff's lack of funds, rather than held pending appeal. *Id.*

Plaintiff was told by custody staff that his property issues were a medical matter, and was then told by medical staff that his property issues were a custody matter. *Id.* at 3-A. Defendants Ashtarie and Talisman told Plaintiff that he should lie about his medical condition, to take

---

[1] Plaintiff fails to state when he arrived at CSATF.

2

1   psychotropic medications and participate in a group therapy session. *Id.*  Plaintiff refused. *Id.*
2   Plaintiff lost thirty pounds since July of 2010, suffering from physical and mental stress,
3   including bleeding while urinating or defecating, and kidney stones. *Id.*

4   Several weeks afterwards, Plaintiff was in contact with his case worker and the
5   supervisor, and mailed petitions via U.S. mail. *Id.*  Plaintiff's outgoing mail was refused, as the
6   prison mailroom staff, Defendants Draper and Madden, would not recognize indigent envelopes
7   from other prisons. *Id.*  Plaintiff had apparently used envelopes from San Quentin State Prison.
8   *Id.*  Plaintiff was not allowed to mail out this alleged legal confidential mail using his inmate
9   trust account because he did not have funds. *Id.*

10   Plaintiff appeared at his Institutional Classification Committee. *Id.*  Defendants Akins,
11   Martins, and Rivera were present. *Id.*  Prison officials failed to check Plaintiff's medical
12   chronos. *Id.*  These chronos are apparently attached as exhibits to his amended complaint, and
13   include information regarding how being double-celled instead of dorm-housed is most
14   beneficial, and how Plaintiff requires a knee brace. Am. Compl., Exs A-E.  Plaintiff contends
15   that he should have been sent back to San Quentin Prison. *Id.* at 3-A.

16   Plaintiff's leg braces and shoes were previously approved at other prisons. *Id.* at 3-B.  In
17   addition to being denied his medical equipment, Plaintiff was denied his religious artifacts and
18   talismans by Defendant Sumpter. *Id.*

19   When his IST hearing was over, Plaintiff suffered bleeding during a bowel movement.
20   *Id.* at 3-C.  Plaintiff was assisted back to his bunk by other inmates, and he was unable to leave
21   his cell for several days. *Id.*  Plaintiff was finally seen by a physician assistant, who noted that
22   Plaintiff was not eligible to participate in treatment for his PTSD (posttraumatic stress disorder)
23   because he was unwilling to receive psychotropic medications or group therapy. *Id.*

24   Plaintiff appealed these issues to the director's level, where Defendant Byers denied
25   Plaintiff's grievance. Ex. A.  Plaintiff contends that he is unable to exercise because he is
26   denied his medical devices. *Id.*

27   Plaintiff requests as relief transfer to San Quentin State Prison, return of his medical
28   devices, compensatory damages for his lost property, and punitive damages.

### III.  Analysis

#### A.  Eighth Amendment - Medical Care

The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and citation omitted).  A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837.

"Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff fails to state a cognizable Eighth Amendment claim.  Plaintiff alleges that he was denied exercise and his medical devices.  Plaintiff also alleges that he is not being treated for his PTSD because he is housed in a dorm.  However, Plaintiff fails to allege how any Defendants knew of and disregarded an excessive risk of serious harm to Plaintiff's health.

#### B.  First Amendment - Free Exercise

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."

4

*McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342 (1987)); *see Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  Only beliefs which are both sincerely held and rooted in religious beliefs trigger the Free Exercise Clause.  *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)); *Callahan v. Woods*, 658 F. 2d 679, 683 (9th Cir. 1981)).  Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." *Id.*  A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90 (internal quotations and citation omitted).  A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.*  "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.*

Plaintiff alleges that he was denied his religious items, which is not sufficient by itself to state a cognizable free exercise claim under the First Amendment.

**C.     Due Process - Property**

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, *see Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," *Hudson*, 468 U.S. at 533.  California provides such a remedy. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam).

5

Plaintiff alleges that his personal property was discarded by prison guard staff, even though pursuant to procedural guidelines, his property should have been retained pending resolution of his inmate grievance. While this may be able to state a cognizable claim, as Plaintiff alleges an authorized, intentional deprivation of property, Plaintiff fails to link specific Defendants to this conduct. Under § 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).

### D. Access To The Courts

Inmates have a fundamental right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002). For backward-looking claims such as that at issue here, plaintiff must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Id.* at 413-14.

The first element requires that plaintiff show he suffered an "actual injury" by being shut out of court. *Christopher*, 536 U.S. at 415; *Lewis*, 518 U.S. at 351. The second element requires that plaintiff show defendant proximately caused the alleged violation of plaintiff's rights, the touchstone of which is foreseeability. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)); *see Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 784-85 (9th Cir. 2000). Finally, the third element requires that plaintiff show he has no other remedy than the relief available via *this* suit for denial of access to the courts. *Christopher*, 536 U.S. at 415. The complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a). *Id.* at 417-18.

Plaintiff contends that mail staff denied him the ability to mail items because of his lack of funds, including denial of legal, confidential mail. It is unclear what Plaintiff means when he

6

refers to legal confidential mail.  If Plaintiff was attempting to mail filings with a court, Plaintiff fails to state a claim for denial of access to the courts.  Plaintiff has not alleged an actual injury by being denied access to the courts.  Additionally, the denial of Plaintiff's mail because of lack of funds does not appear to be a denial of access to the courts.  For example, Plaintiff has been able to file his complaint with this court.

  **E.**  **Title II of the Americans with Disabilities Act And Rehabilitation Act of 1973**

Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA") "both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.  Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U. S. C. § 794.  Title II of the ADA and the RA apply to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997); *Duffy v. Riveland*, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell*, 303 F.3d at 1052. "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." *Id.*

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for

7

intentional discrimination is deliberate indifference. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).

Plaintiff has not sufficiently alleged a cognizable ADA or RA claim. Plaintiff alleges only that he has a disability, without alleging more regarding denial of the prison's services, programs, or activities.

### F.    Supervisory Liability

The Supreme Court emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. *Iqbal*, 129 S. Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct.

When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor*, 880 F.2d . *List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff names supervisory Defendants Clark, Enenmoh, and Pegleeosi, but fails to allege how these Defendants are liable for a violation of Plaintiff's constitutional or federal rights.

### IV.    Conclusion And Order

Plaintiff's amended complaint is dismissed for failure to state a claim against any Defendants. The Court will provide Plaintiff with an opportunity to file a second amended

complaint curing the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff decides to amend, Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. *Iqbal*, 129 S. Ct. at 1949. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," L. R. 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567 (citing to *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord Forsyth*, 114 F.3d at 1474.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's first amended complaint is dismissed for failure to state a claim, with leave to file a second amended complaint within **thirty (30) days** from the date of service of this order; and
3. If Plaintiff fails to comply with this order, the Court will dismiss this action for failure to obey a court order and failure to state a claim.

IT IS SO ORDERED.

Dated:   **September 22, 2011**          /s/ **Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE